**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MICHAEL JAMES SMITH,              No   C 05-2877  VRW

12              Plaintiff,             ORDER

13              v

14   SEIU UNITED HEALTHCARE WORKERS
     WEST (HEALTHCARE WORKERS UNION
15   SEIU LOCAL 250) and SAL ROSELLI,

16              Defendants.
     _____/
17

18

19         SEIU United Healthcare Workers West ("Local 250") and Sal

20   Roselli (collectively "defendants") move pursuant to FRCP 12(b)(6)

21   to dismiss the second amended complaint, Doc #29 (SAC), filed by

22   plaintiff Michael James Smith, which alleges federal claims for

23   retaliation as well as supplemental claims for relief.  Doc #32.

24   Defendants also move to strike paragraph 8 of the SAC pursuant to

25   FRCP 12(f).  As explained below, defendants' motion to strike is

26   DENIED and defendants' motion to dismiss is GRANTED IN PART and

27   DENIED IN PART.

28   //

**United States District Court**
For the Northern District of California

I

The following facts are taken as true for purposes of the present motion:

Smith was employed for 18 years by Local 250 as a front-line labor representative. SAC ¶5. Roselli was the president of Local 250 and one of Smith's supervisors. Id ¶6.

On May 23, 2002, Smith filed a complaint in this court, against Local 250 and Roselli, _Michael James Smith v Healthcare Workers Union SEIU Local 250, Sal Roselli, Joan Emslie, and Will Clayton_, No C-02-2508-JSW, asserting claims for age and disability discrimination under the Americans with Disabilities Act (ADA), 42 USC § 12101 et seq, the Age Discrimination in Employment Act (ADEA), 29 USC § 621 et seq, the Family Medical Leave Act (FMLA), 29 USC § 2601 et seq and the California Fair Employment and Housing Act (FEHA), Cal Gov't Code § 12900 et seq. Id ¶¶7, 17, 22, 27. While the suit was pending, Local 250 employees repeatedly prevented Smith from speaking at various functions and publicized his status as an opposing litigant. Id ¶8. On June 3, 2003, the parties settled all claims that had accrued as of that date, and Judge White dismissed the action on September 17, 2003. Id.

After Smith left his job at Local 250, SEIU Local 707, another healthcare workers' union, hired Smith as a consultant. In that capacity, Smith attended a business meeting on July 19, 2003, at a Marriot hotel in Oakland. At that meeting, Local 250 employee Ralph Cornejo accosted Smith, commanding him in a loud voice to "get the f**k out of here." Id ¶9. Another Local 250 employee conferred with Roselli, who was not at the scene, and received authorization from him to force Smith to leave. Two security

United States District Court

For the Northern District of California

1   guards were summoned, who in turn called the Oakland police

2   department, upon whose arrival Smith left the scene.  Hundreds of

3   representatives from various labor organizations attending the

4   meeting witnessed the incident.  Id.

5       Apparently in response to this incident, on September 5,

6   2003, Smith's superior wrote a letter to the international

7   president of SEIU, the parent organization of both Local 707 and

8   Local 250, asking the organization to direct Local 250 not to

9   interfere with Smith's work.  Id ¶10.  Then Roselli wrote an

10  unsolicited letter to the international president, which contained

11  allegedly defamatory remarks about Smith.  Id.  On November 12,

12  2003, Smith filed an EEOC complaint against defendants for

13  retaliation, which included a copy of this letter.  Id ¶38.

14      In response to Roselli's letter, Smith's superior wrote

15  the international president again and affirmed his support of

16  Smith, but also stating his intention to limit Smith's

17  participation in certain work involving contact with Local 250

18  because of Roselli's strong opposition to Smith.  Id ¶11.  Smith

19  was subsequently removed from a large project on which he had been

20  working for two years, and after Smith completed his contract with

21  Local 707, the union did not offer Smith any further employment.

22  Id ¶12.  Since then, Smith has remained unemployed despite repeated

23  applications to potential employers in the labor union community.

24  Id ¶13.

25      On July 14, 2005, Smith filed the instant action against

26  Local 250 and Roselli alleging retaliation in violations of the

27  ADA, ADEA, FMLA and FEHA.  Doc #1.  Smith also alleged supplemental

28  claims for defamation, interference with prospective business

3

advantage, intentional infliction of emotional distress and blacklisting in violation of California Labor Code sections 1050, 1052 and 1054.  Id.  On December 1, 2005, the court dismissed Smith's first amended complaint in its entirety due to non-compliance with FRCP 8.  See Doc #28.  Smith timely filed the SAC.

II

The court finds it appropriate first to address defendants' motion to strike paragraph 8.

A

Under FRCP 12(f), a court "may order stricken from any pleading * * * any redundant, immaterial, impertinent, or scandalous matter."  Immaterial matters have "no essential or important relationship to the claim for relief."  <u>Fantasy, Inc v Fogerty</u>, 984 F2d 1524, 1527 (9th Cir 1993), rev'd on other grounds, 510 US 517, 534-35 (1994).  Impertinent matters consist of "statements that do not pertain, and are not necessary, to the issues in question."  Id (internal quotations omitted).  "Superfluous historical allegations are a proper subject of a motion to strike."  Id.

Motions to strike are disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  <u>Colaprico v Sun Microsystems, Inc</u>, 758 F Supp 1335, 1339 (ND Cal 1991).  When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party."  <u>In re 2TheMart.com, Inc Securities Litig</u>, 114 F Supp 2d 955, 965 (CD

4

United States District Court

For the Northern District of California

Cal 2000).  A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action.  Id.  "Evidentiary allegations are not usually proper pleading, but allegations supplying background or historical material or other matters of an evidentiary nature will not be stricken unless unduly prejudicial to defendant."  LeDuc v Kentucky Life Ins Co, 814 F Supp 820, 830 (ND Cal 1992).

B

Defendants move to strike paragraph 8 of the SAC on the ground that it alleges conduct that occurred prior to the settlement agreement in the earlier litigation.  Because all claims arising from such conduct were extinguished by that settlement, paragraph 8 is, according to defendants, immaterial.  Defendants further argue that paragraph 8 is prejudicial.

Smith contends that paragraph 8 "describe[s] the beginning of a course of conduct that continues to this day" and is "necessary to an understanding of the events which followed settlement."  Doc #44 at 24.  Smith relies upon National Railraod Passenger Corp v Morgan, 536 US 101, 113 (2002), in which the Supreme Court stated that discrete acts of discrimination, although not the subject of a timely filed EEOC complaint, could still be used as "background evidence in support of a timely claim."

Defendants distinguish Morgan, which addressed facts underlying time-barred claims, from this case, which involves facts underlying claims the parties have agreed not to litigate.  Perhaps the distinction is significant; perhaps not.  Regardless, and without deciding, whether defendants' evidence of pre-settlement

United States District Court

For the Northern District of California

conduct might be admissible "background evidence," the fact remains that Smith cannot base any of the claims asserted in the SAC upon conduct covered by the settlement agreement so long as that agreement is in force.  For in that circumstance, the claim would have arisen prior to execution of, and would therefore have been extinguished by, the settlement agreement.  But the court finds it unnecessary to strike paragraph 8 in order to give meaning to the settlement agreement.  Defendants' motion to strike is therefore DENIED.

Still, the court will remark that defendants' motion to strike was well-taken given that the SAC utterly fails to comply with FRCP 8, which requires that complaints contain nothing more than a short, plain statement of the claims and supporting allegations.  Indeed, the court dismissed the first amended complaint in its entirety for precisely this reason.  Yet the same rococo detail remains in the SAC.  Counsel's penchant for verbosity is further evidenced by Smith's opposition to defendants' motions, Doc #44, which exceeds the 25-page limit imposed by the local rules.  See Civ L R 7-3(a).  Had plaintiff's counsel refrained from the jabs at opposing counsel, numerous as they were pointless, the court has no doubt that Smith's opposition would have complied with the local rules.

III

Rule 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  Although a plaintiff is not held to a "heightened pleading

United States District Court

For the Northern District of California

standard," the plaintiff must provide more than mere "conclusory allegations." <u>Swierkiewicz v Sorema NA</u>, 534 US 506, 515 (2002) (rejecting heightened pleading standards); <u>Schmier v United States Court of Appeals for the Ninth Circuit</u>, 279 F3d 817, 820 (9th Cir 2002) (rejecting conclusory allegations).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Hughes v Rowe</u>, 449 US 5, 9 (1980) (citing <u>Haines v Kerner</u>, 404 US 519, 520 (1972)); see also <u>Parks School of Business, Inc v Symington</u>, 51 F3d 1480, 1484 (9th Cir 1985). All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff. See <u>Gompper v VISX, Inc</u>, 298 F3d 893, 895 (9th Cir 2002). But "the court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." <u>Sprewell v Golden State Warriors</u>, 266 F3d 979, 988 (9th Cir 2001) (citing <u>Clegg v Cult Awareness Network</u>, 18 F3d 752, 754-55 (9th Cir 1994)).


IV

*Federal Claims*

To establish a prima facie case of retaliation under the ADA, ADEA and FMLA, Smith must show that: (1) he engaged in a protected activity, (2) suffered an adverse employment action and (3) there was a causal link between the two. <u>Pardi v Kaiser Permanente Hosp, Inc</u>, 389 F3d 840, 849 (9th Cir 2004) (ADA); <u>O'Day v McDonnell Douglas Helicopter Co</u>, 79 F3d 756, 763 (9th Cir 1996)

United States District Court

For the Northern District of California

(ADEA); <u>Washington v Fort James Operating Co</u>, 110 F Supp 2d 1325, 1330 (D Or 2000) (citing <u>Morgan v Hilti</u>, 108 F3d 1319, 1325 (10th Cir 1997)) (FMLA).  Defendants advance several arguments for dismissing Smith's federal claims.

A

Defendants first contend that actions taken against a former employee by his former employer after the employment relationship has been severed cannot give rise to claims for retaliation under federal law.

The ADEA provides in pertinent part:

> It shall be unlawful for an employer to discriminate against any of his employees * * * because such individual * * * has opposed any practice made unlawful by this section, or because such individual * * * has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

29 USC § 623.

"Employee," as used in the virtually identical language of Title VII of the Civil Rights Act of 1964, includes former employees. <u>Robinson v Shell Oil Co</u>, 519 US 337, 346 (1997).  "To read the [ADEA] otherwise would be to deny protection to any person who has suffered discharge or termination due to unlawful discrimination.  Obviously, Congress could not have intended such an absurd result."  <u>Passer v American Chemical Society</u>, 935 F3d 322, 331 (DC Cir 1991).

The ADA and FMLA anti-retaliation provisions protect not only "employees," but "any individual."  29 USC § 2615(a)(2); 42 USC § 12203.  Because the statutes do not define "individual," following the Supreme Court's lead, the court takes it as "a

8

United States District Court

For the Northern District of California

broader term than 'employee' [that] would facially seem to cover a former employee." Robinson, 519 US at 345.

The court concludes that Smith has statutory standing to assert his federal claims.

**B**

Next, defendants argue that Smith has not alleged adverse employment action. In the Ninth Circuit, "adverse employment action" means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v Henderson, 217 F3d 1234, 1242-43 (9th Cir 2000). This deterrence standard "does not limit what type of discrimination is covered, nor does it prescribe a minimum level of severity for actionable discrimination." Id at 1243.

Defendants contend that no reasonable person in Smith's position would be deterred by the allegedly retaliatory conduct. According to defendants, because Smith was no longer in their employ, he could not possibly have been deterred by the threat of any future employment action from them. In other words, Smith "had nothing to fear, and nothing to lose." Doc #33 at 8.

The court disagrees. Retaliation against one person's exercise of protected rights "can have a deleterious effect on the exercise of these rights by others." Hashimoto v Dalton, 118 F3d 671, 676 (9th Cir 1997). Thus, the question is not whether Smith was actually deterred by defendants' alleged conduct. Rather, the inquiry is whether a reasonable person in Smith's position would be deterred. If defendants' interpretation were correct, a

United States District Court

For the Northern District of California

retaliation claim could never arise from conduct that occurs after protected activity. This is untenable.

Defendants further contend that their conduct does not constitute adverse employment action because the Ninth Circuit has noted that "badmouthing an employee outside the job reference context do[es] not constitute adverse employment actions." <u>Brooks v City of San Mateo</u>, 229 F3d 917, 929 & n 12 (9th Cir 2000) (citing <u>Nunez v City of Los Angeles</u>, 147 F3d 867, 875 (9th Cir 1998)). <u>Brooks</u>, however, did not involve anything that could be characterized as "badmouthing," which relegates the language upon which defendants rely to the status of <u>obiter dictum</u>. Moreover, <u>Nunez</u> is factually distinguishable from the present case. There, the plaintiff merely alleged that "his superiors retaliated by scolding him and threatening to transfer or to dismiss him." <u>Nunez</u>, 147 F3d at 874. In contrast, this case involves significantly different circumstances under which defendants allegedly badmouthed Smith in front of other employees as well as potential employers, albeit not in the typical job reference context.

Out-of-circuit authority is instructive. In <u>Passer</u>, *supra*, a chemist sued his former employer for age discrimination in violation of the ADEA. <u>Passer</u>, 935 F3d at 324. In response, plaintiff's employer canceled a special symposium to have been held in plaintiff's honor a few days before it was to have begun. Id at 325. The court accepted as true plaintiff's allegation that the cancellation "humiliated him before the assemblage of his professional associates and peers from across the nation, and made it more difficult for him to procure future employment" and held

that plaintiff had stated a retaliation claim under the ADEA.  Id
at 331-32.  See also <u>Ray</u>, 217 F3d at 1241 (expressing agreement
with <u>Passer</u>'s application of the deterrence standard).

Turning to the present case, Smith's allegations satisfy
the deterrence test.  Smith alleges that although he was publicly
accosted by Local 250's agent at the union meeting in Oakland,
subjected to verbal obscenities and ordered to leave the premises
by security guards and police officers summoned to the scene.  SAC
¶9.  Smith also alleges that this incident "occurred in view of
representatives of the numerous SEIU local unions that would make
up the natural pool of potential employers for Plaintiff."  Id.
Smith further alleges that Roselli defamed him to the president of
a potential employer.  Id ¶10.  Finally, Smith claims that as a
result of these allegedly retaliatory acts, he has lost "future
employment opportunities."  Id ¶¶15, 20.  As in <u>Passer</u>, the
gravamen of these allegations is that humiliation in the presence
of prospective employers constituted adverse employment action.

Under the deterrence standard applied by the Ninth
Circuit, defendants' alleged conduct would be reasonably likely to
deter persons in Smith's position from engaging in protected
activity.  Hence, Smith has stated claims for retaliation under the
ADA, ADEA and FMLA.  Defendants' motion to dismiss Smith's federal
claims is accordingly DENIED.

//

//

//

//

//

*United States District Court*
For the Northern District of California

V

*State Law Claims*

A

Defendants move to dismiss Smith's FEHA claim on the ground that Smith has not alleged adverse employment action.

In contrast to federal law, "the proper standard for defining an adverse employment action [under California law] is the 'materiality' test, a standard that requires an employer's adverse action to materially affect the terms and conditions of employment, rather than the arguably broader 'deterrence' test." Yanowitz v L'Oreal USA, Inc, 36 Cal 4th 1028, 1036 (2005) (internal citations omitted). The "materiality" test looks to whether the alleged retaliatory conduct "is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." Id at 1054-55. Once again, defendants argue that because Smith was no longer an employee of Local 250, the alleged retaliatory conduct does not constitute adverse employment action. For purposes of Smith's FEHA claim, the court agrees.

Smith cites no authority for the proposition that defendants are liable under FEHA for materially affecting the terms and conditions of his employment with a new employer. Nor has Smith alleged that defendants refused to rehire him. Under these circumstances, the court simply cannot construe Smith as alleging that defendants' alleged retaliatory conduct affected Smith's "prospects for advancement or promotion." For it does not appear the California Supreme Court's interpretation of FEHA protects Smith's prospects for future employment with other employers. See,

12

United States District Court

For the Northern District of California

e g, <u>Yanowitz</u>, 36 Cal 4th at 1050 ("[T]he Legislature intended to extend a comparable degree of protection both to employees who are subject to * * * basic forms of discrimination * * * —— that is, for example, discrimination on the basis of race or sex —— and to employees who are discriminated against in retaliation for opposing such discrimination * * *."). Smith's reliance upon Ninth Circuit precedent, Doc #44 at 21, is misplaced, see <u>Yanowitz</u>, 36 Cal 4th at 1050 & n 10 (noting that the Ninth Circuit applies the broader deterrence test).

Accordingly, defendants' motion to dismiss Smith's FEHA claim is GRANTED.

B

Defendants move to dismiss Smith's defamation claim on the grounds that (1) the claim is barred by the applicable statute of limitations, (2) the allegedly defamatory statements are privileged under California Civil Code § 47 and (3) the allegedly defamatory statements are non-actionable opinion.

1

Under California law, a claim for defamation must be commenced within one year of the alleged defamatory act. Cal Civ Code § 340(c). The defamatory statements alleged in the SAC were contained in a letter authored by Roselli on September 12, 2003. See SAC ¶¶10, 33. Smith filed his original complaint on July 14, 2005, approximately 22 months after the alleged defamatory acts. Ostensibly, then, Smith's claim for defamation is barred by limitations.

United States District Court

For the Northern District of California

Smith invokes the doctrine of "equitable tolling," arguing that the filing of his EEOC complaint on November 12, 2003 (i e, within the limitations period), tolled the running of the statute until the EEOC issued a determination of probable retaliation on April 21, 2005.  SAC ¶38.  Hence, Smith asserts that his claim was timely filed less than three months after that determination.

"As with the limitations period itself, [the court borrows] rules for equitable tolling of the period from the forum state, California."  Cervantes v City of San Diego, 5 F3d 1273, 1275 (9th Cir 1993).  In Cervantes, the Ninth Circuit summarized the law of equitable tolling in California:

> Under California law, equitable tolling relieves plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage. * * *  California courts have developed a definitive three-pronged test for invocation of the doctrine of equitable tolling.  A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim.

Id (internal quotations and citations omitted).  Defendants contend that Smith cannot satisfy the second prong.  Specifically, defendants posit that they would be prejudiced because Smith's EEOC complaint did not put them on notice of the need to investigate and defend against a defamation claim.

Defendants overlook that "the focus of [the prejudice] factor is whether the facts of the two claims are 'at least so similar that the defendant's investigation of the first claim will

14

United States District Court

For the Northern District of California

put him in a position to fairly defend the second.'"  Id at 1276
(quoting <u>Collier v City of Pasadena</u>, 142 Cal App 3d 917, 925
(1983)).  And "[u]nder California's equitable tolling test,
'similarity' is less a legal conclusion and more a factual
exploration of the contentions and evidence relevant to each claim.
As such, 'similarity' is not easily resolved as a matter of law,
without receiving evidence."  Id.  "The sole issue is whether the
complaint, liberally construed in light of our 'notice pleading'
system, adequately alleges facts showing the <u>potential</u>
applicability of the equitable tolling doctrine."  Id at 1277
(emphasis in original).

For example, in <u>Cervantes</u>, the plaintiff invoked
equitable tolling to save his otherwise untimely claims for
wrongful termination.  Id at 1274.  He claimed that defendants
conspired to violate his civil rights by framing him for illegal
drug use and sale, which resulted in his wrongful termination.
"Because loss of employment [was] the main injury alleged * * *, a
showing that [the plaintiff] was not framed but was in fact guilty
of the offenses resulting in his termination is an obvious defense
both here and in the administrative proceedings."  Id at 1277 n 5.

Moreover, the plaintiff in <u>Cervantes</u> alleged facts that
entitled him to develop a factual basis for equitable tolling.  "He
allege[d] timely initiation of administrative efforts seeking
reinstatement [after his termination] and timely filing of [his
court] action once those proceedings were completed."  Id at 1277.
"His allegations [also suggested] that defending the prior
proceedings would have necessarily involved the collection of
evidence to rebut his claims [in court]."  Id.  "Finally, none of

United States District Court

For the Northern District of California

the allegations indicate[d] that, as a matter of law, [the plaintiff] acted other than reasonably and in good faith in bringing this action."  Id.  Accordingly, the court reversed dismissal, holding that "allegations of [the plaintiff's] pursuit of administrative reinstatement entitle[d] him to offer evidence to support his contention that the limitations period was equitably tolled."  Id.

In the present case, Smith has similarly alleged timely initiation of administrative proceedings with the EEOC one month after an allegedly retaliatory act.  His allegations suggest that defending his retaliation claim, an element of which is the Roselli letter, would have necessarily involved the collection of evidence to rebut his defamation claim based on the same letter.  Because retaliatory conduct is the main injury alleged by Smith, a showing that Smith was not defamed but did in fact behave as Roselli represented is an obvious defense both here and in the EEOC proceedings.  Finally, none of the allegations indicates that, as a matter of law, Smith acted other than reasonably and in good faith in bringing this action. "[O]rdinarily equitable tolling is not properly resolved at the pleading stage," id, and this case is not exceptional.  Smith is entitled to offer evidence to support his contention that equitable tolling applies.  Accordingly, the court declines to dismiss Smith's defamation claim as time-barred at this point in the proceedings.

//

//

//

//

16

United States District Court

For the Northern District of California

**2**

Section 47 of the California Civil Code bestows privileged status upon a "publication or broadcast" that is made "[i]n a communication, without malice, to a person interested therein."  Although Smith specifically alleges defendants acted "with malice," SAC ¶37, defendants contend that Smith's allegations do not overcome the privilege, Doc #33 at 11.

"Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  FRCP 9.  Moreover, Smith has alleged facts that, if proved, would support an inference of malice.  Specifically, Smith has alleged that Roselli (1) intended to misrepresent Smith to the SEIU international president, (2) knew his statements about Smith were false or published them with reckless disregard of their veracity, (3) knew of Smith's psychological and emotional sensitivities and (4) purposefully engaged in defamatory conduct.  SAC ¶¶33-37.  Accordingly, the court finds that Smith's allegations are sufficient to overcome defendants' invocation of the statutory privilege at this point in the proceedings.  See, e g, <u>Steven v Rifkin</u>, 608 F Supp 710, 734 (ND Cal 1984) (Aguilar).


**3**

To be defamatory, "the publication in question must contain a false statement of <u>fact</u>."  <u>Gregory v McDonnell Douglas Corp</u>, 17 Cal 3d 596, 600 (1976) (emphasis in original).  "The dispositive question for the court is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion."  <u>Moyer v Amador Valley J Union</u>

United States District Court

For the Northern District of California

High School Dist, 225 Cal App 3d 720, 724 (1990).  "The answer to that question is determined by applying the 'totality of circumstances' test —— a review of the meaning of the language in context and its susceptibility to being proved true or false."  Id at 725.  "This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed."  Baker v Los Angeles Herald Examiner, 42 Cal 3d 254, 261 (1986).  "If the publication so construed is not reasonably susceptible of a defamatory meaning and cannot be reasonably understood in the defamatory sense pleaded," dismissal is proper.  Id.

Smith essentially alleges that the letter contained three defamatory statements that Smith is (1) "disreputable," (2) "unstable and unpredictable and prone to embarrassing outbursts at meetings" and (3) "incapable of respecting the confidences and discipline necessary to fight an employer like Sutter."  SAC ¶33.  The first statement expresses Roselli's opinion that Smith is subjectively held in low esteem by others and, as such, is not actionable.  The second and third statements, however, do imply falsifiable facts.  As alleged in the SAC, these statements suggest that Smith has, in fact, disrupted meetings, betrayed the confidences of others and otherwise displayed an inability to represent workers against major employers.  Id.  Furthermore, Roselli's position as Smith's former supervisor would lead the recipient of the letter to believe Roselli's words as statements of fact regarding a former subordinate's performance and abilities.  See Kahn v Bower, 232 Cal App 3d 1599, 1608 (1991) (finding that

United States District Court

For the Northern District of California

because of defendant's "professional status and that of the person to whom she wrote, plaintiff's supervisor," allegedly defamatory letter was susceptible to interpretation that plaintiff's incompetence was a matter of fact).

Defendants' motion to dismiss Smith's defamation claim is DENIED.

C

Smith's sixth claim alleges intentional interference with prospective business advantage.  To establish this claim, Smith must show "(1) an economic relationship between [Smith] and some third party, with the probability of future economic benefit to [Smith]; (2) the [defendants'] knowledge of the relationship; (3) intentional acts on the part of the [defendants'] designed to disrupt the relationship; (4) actual disruption of the relationship" and (5) defendants' conduct caused economic harm to Smith.  <u>Youst v Longo</u>, 43 Cal 3d 64, 71 n 6 (1987).  Additionally, Smith must show that defendants' conduct was independently wrongful — that is, "wrongful apart from the interference itself." <u>Korea Supply Co v Lockheed Martin Corp</u>, 29 Cal 4th 1134, 1154 (2003). Finally, "[a]n essential element of the tort of intentional interference with prospective economic advantage is the existence of a business relationship with which the tortfeasor interfered. Although this need not be a contractual relationship, an existing relationship is required." <u>Roth v Rhodes</u>, 25 Cal App 4th 530, 546 (1994) (citations omitted).

Defendants contend that "Smith has not alleged any existing relationship with any party other than Local 707, for whom

United States District Court

For the Northern District of California

he completed all services on his contract with that union." Doc #33 at 13. In other words, there was no disruption to the only existing relationship alleged in the SAC. Implicit in defendants' argument is the proposition —— for which defendants' have cited no authority —— that an economic relationship evidenced by a contract which expires by its own terms cannot have been "disrupted" for purposes of tortious interference.

The SAC alleges that following a conversation with Roselli, Local 707 general manager Bill Steck informed Smith that Smith "would not be a part of [the statewide Sutter campaign], even though his work with the Sutter nurses as a consultant to SEIU Local 707 had already been budgeted for." SAC ¶12. Later, Steck informed Smith that "he was definitely off the Sutter hospital campaign —— the project for which SEIU Local 707 had hired him, and upon which he had been working for the previous two years." Id. Although Smith "was allowed to do other work in order to finish out his contract with SEIU Local 707," he "received no further employment from that union." Id.

These allegations sufficiently allege a disruption to the relationship between Smith and Local 707 as well as a causal connection between Roselli's conduct and the disruption. See also SAC ¶¶10-11. And reasonably construed in favor of Smith, the SAC sufficiently alleges a probability that the relationship between Smith and Local 707 would have continued beyond the initial contractual term.

Defendants also challenge the sufficiency of the allegations with respect to intent and economic harm. The SAC alleges that Roselli "accuse[d] SEIU Local 707 of putting the

United States District Court

For the Northern District of California

interests of a disreputable consultant ahead of the interests of SEIU members because SEIU Local 707 refused to join in [Local 250]'s concerted campaign of retaliatory blacklisting against" Smith.  SAC ¶10 (internal quotations omitted).  On this basis, the finder of fact could infer that Roselli intended to interfere with Smith's relationship with Local 707.  With regard to economic harm, the court is satisfied that the allegations of the SAC are sufficient.  See SAC ¶13.

Defendants' motion to dismiss the claim for intentional interference with prospective economic advantage is DENIED.

**D**

Smith's claim for blacklisting arises under sections 1050, 1052 and 1054 of the California Labor Code.  Section 1050 provides:  "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Section 1052 provides:  "Any person who knowingly causes, suffers, or permits an agent, superintendent, manager, or employee in his employ to commit a violation of section[] 1050 * * *, or who fails to take all reasonable steps within his power to prevent such violation is guilty of a misdemeanor."  Section 1054 creates civil liability for violations of sections 1050 and 1052.

Defendants do not argue that Smith has failed to allege a violation of either section 1050 or section 1052.  Defendants' sole argument for dismissing Smith's blacklisting claim is predicated

upon section 1053, which provides in relevant part:  "Nothing in this chapter shall prevent an employer or an agent, employee, superintendent or manager thereof from furnishing, <u>upon special request therefor</u>, a truthful statement concerning the reason for the discharge of an employee or why an employee voluntarily left the service of the employer" (emphasis added).  Defendants argue that the following allegation brings Smith's blacklisting claim within the ambit of section 1053:

> On September 5, 2003, SEIU Local 707 General Manager Allen wrote a letter to [SEIU] International President Andrew Stern * * *.  In this letter, General Manager Allen asked the International office to direct [Local 250] not to interfere with the Plaintiff's work and pointed out again that it was illegal for [Local 250] to engage in retaliatory blacklisting. * * * Without being asked for his response or opinion by anyone, * * * Sal Roselli sent a letter of his own to International President Stern, dated September 12, 2003.

SAC ¶10.

According to defendants, Roselli would not have sent this letter had Allen not initiated correspondence with Stern.  Doc #33 at 15. Therefore, according to defendants, the SAC alleges that Roselli's letter was in response to Allen's letter, and section 1053 applies.

The court is unpersuaded.  Nowhere does Smith allege facts suggesting that Roselli's letter was in response "to a <u>request</u> therefor" by Stern, Allen or anyone else as required by section 1053.  Defendants' motion to dismiss Smith's blacklisting claim is DENIED.

//

//

//

//

22

**United States District Court**

For the Northern District of California

**United States District Court**

For the Northern District of California

E

Smith's eighth claim alleges intentional infliction of emotional distress (IIED).  In order to establish a claim for IIED, a plaintiff must show (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress;" (2) plaintiff suffered "severe or extreme" emotional distress and (3) causation. Christensen v Superior Court, 54 Cal 3d 868, 903 (1992) (internal quotations omitted).  In order to be outrageous, conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Id.

Further, "[i]t is not enough that the conduct be intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  Id at 905.  "The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff."  Id. "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs * * * justifies recovery * * *."  Id at 906 (emphasis added).

Smith's IIED claim arises from two events:  Smith's ejection from the business meeting and Roselli's letter to Stern.

1

The Roselli letter cannot give rise to a claim for IIED in the absence of any allegation that the letter was directed at

23

United States District Court

For the Northern District of California

Smith.  But nowhere does the SAC allege that Roselli intended to send the letter to Smith (or anyone else besides Stern) or that Roselli knew Smith would be present when the letter was read.  SAC ¶10.  Hence, even if the letter was defamatory, Smith has failed to allege any conduct directed at him or occurring in his presence which was known to defendants.

Smith does allege that defendants recklessly disregarded his interests because they "knew or should have known, to a substantial certainty," that Roselli's letter "would result in severe emotional distress" to Smith.  SAC ¶49.  But Smith has not alleged that he was <u>actually present</u> at the time the allegedly outrageous conduct occurred.  Therefore, Smith cannot invoke the "reckless disregard" exception to the general rule that to state a claim for intentional infliction of emotional distress, defendants' conduct must be directed at plaintiff, or occur in the presence of a plaintiff of whom defendant is aware.

2

With regard to Smith's alleged ejection from the business meeting, the SAC does not allege that Roselli was present during the confrontation.  The SAC only suggests that Roselli authorized a Local 250 employee to eject Smith which, as the president of the organization renting the facility, was ostensibly his prerogative. SAC ¶9.  This is not extreme or outrageous conduct.  And any public embarrassment and accompanying distress Smith may have suffered after he was instructed to leave would have been attributable at least in part to his refusal promptly to do so.

//

United States District Court

For the Northern District of California

Smith seeks recovery from Local 250, but has failed to allege facts that would establish a basis for *respondeat superior*. In order to hold Local 250 vicariously liable, Smith must establish that a Local 250 employee is liable for intentional infliction of emotional distress.  Smith has alleged that another Local 250 employee, Ralph Cornejo, accosted him with verbal obscenities before numerous labor representatives at the meeting.  Id.  But Cornejo is not a party in this action.  Even assuming that Cornejo's conduct was extreme and outrageous, Smith has alleged nothing regarding Cornejo's intention of causing, or reckless disregard of the probability of causing, emotional distress to Smith.  Hence, no facts or inferences drawn from the face of the SAC suggest that Roselli or any other Local 250 employee may be liable for IIED based on Smith's ejection from the business meeting in Oakland.

Defendants' motion to dismiss the claim for IIED is accordingly GRANTED.

F

Finally, defendants move to dismiss all common law causes of action against Roselli on the ground that individual employees cannot be sued in connection with personnel actions.  In this regard, defendants rely primarily upon <u>Sheppard v Freeman</u>, 67 Cal App 4th 339, 347 (1998), in which a split panel of an intermediate California appellate court held that "an employee or former employee cannot sue individual employees based on their conduct, including acts or words, relating to personnel actions."

//

25

United States District Court

For the Northern District of California

The court doubts whether the California Supreme Court would adopt the rule of Sheppard.  So far as the court can tell, Sheppard has yet to be cited by another state court, and its holding has been flatly rejected after extensive analysis by at least one federal court.  See Graw v Los Angeles Metropolitan Transp Authority, 52 F Supp 2d 1152, 1155-60 (CD Cal 1999).  In any event, the court concludes that Sheppard is inapplicable because plaintiff's common-law claims arise from conduct that occurred after plaintiff and Roselli's relationship as employees was terminated.  Under these circumstances, Roselli's conduct cannot be characterized as personnel action for purposes of the dubious co-employee privilege apparently established by Sheppard.

VI

In sum, defendants' motion to strike is DENIED. Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge

26